IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

WILLIS MATHIEWS, )
)
Plaintiff, )
)
v. ) Case No. CIV-10-010-RAW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Willis Mathiews (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 22, 1972 and was 37 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has no past relevant work. Claimant alleges an inability to work beginning June 1, 1998, due to back problems

3

and bipolar disorder.

## Procedural History

On August 24, 2006, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, et seq.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On March 6, 2009, an administrative hearing was held before ALJ Osly F. Deramus in McAlester, Oklahoma. On May 21, 2009, the ALJ issued an unfavorable decision on Claimant's application. On November 13, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to find Claimant met a listing; (2) failing to give Claimant's

4

treating physician controlling weight; and (3) reaching an erroneous RFC assessment which is not supported by substantial evidence.

## Evaluation of a Listing

Claimant asserts the ALJ erroneously determined that his back condition failed to qualify for Listing 1.04C related to spinal disorders. Claimant underwent an MRI on June 22, 2004 which showed small disc herniations at L4-5 in the midline and L5-S1 in the midline. (Tr. 306). On March 27, 2006, Claimant was attended by Dr. James Rodgers. Dr. Rodgers found Claimant to have left leg L5 sciatica, a herniated disc at L4-5, left, degenerative disc disease at L5-S1. Testing revealed Claimant straight leg raising on the right side, knee-chest maneuvering and figure-of-four testing were pain free. On the left side, all three maneuvers caused left hip pain, but mostly on the straight leg raising. Dr. Rodgers noted L5 and S1 hypesthesia in the left foot compared to the right. Range of motion of the back reveals Claimant could forward flex only 40 degrees, extension was bothersome beyond 5 degrees. (Tr. 195). Dr. Rodgers did not recommend a fusion but rather a microdisketomy at L4-5. (Tr. 196).

A further MRI performed on April 10, 2006 showed a bulging annulus at L4-5 and L5-S1. (Tr. 169). On May 17, 2006, a

microdiskectomy was performed at L4-5. (Tr. 190).

In July of 2006, Plaintiff complained of pain rated 10 out of 10 in his back after hauling hay. Straight leg raising was 25 degrees on the left and 30 degrees on the right. (Tr. 172). On August 15, 2006, an MRI showed post surgical changes in L4-5. On the left side, significant edema was noted associated in or near the facet joint level with a mass effect seen extending into the spinal canal surrounding the nerve root. Claimant was found to have spinal stenosis at L4-5 and L5-S1. Posterior osteophytes were seen at L5-S1. (Tr. 168).

On September 6, 2006, Claimant saw Dr. Rodgers with increasing and intense pain in his left hip and leg. Positive straight leg raising was noted on the left. Dr. Rodgers acknowledged a large recurrent disc herniation at L4-5 on the left. He recommended Claimant undergo a second lumbar microdiskectomy since Claimant opposed a fusion. (Tr. 179).

On January 7, 2007, Dr. Rodgers recommended a fusion. He believed he had two degenerative discs and a recurrent disc herniation at L4-5. (Tr. 252).

On February 20, 2007, an additional MRI was performed. This MRI showed a large extruded disc fragment and recurrent disc herniation at L4-5. (Tr. 309). Claimant stated he could not

6

afford the surgery. (Tr. 321).

On July 3, 2007, Claimant began seeing Dr. Nelson Onaro for pain management. Claimant reported that his low back pain caused him anxiety, depression, mood swings, and sleep problems (Tr. 303-04). In a January 25, 2008 visit, Dr. Onaro noted Claimant experienced tenderness in the lower lumbar region with palpitation and range of motion. Leg spasms were present in a March 24, 2008 examination. On June 17, 2008, Claimant's left leg had atrophied. (Tr. 338).

On May 20, 2008, Dr. Onaro completed a Medical Source Opinion of Residual Functional Capacity form on Claimant. He estimated Claimant could frequently carry/lift less than 10 pounds, infrequently sit and stand/walk, infrequently use his arms for reaching, pushing, and pulling, and infrequently use his hands for grasping, handling, fingering, or feeling. (Tr. 315).

A Physical Residual Functional Capacity Assessment form was completed by agency physician Dr. David Bissell on November 7, 2006. He determined Claimant could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk about 6 hours in an 8 hour work day, sit about 6 hours in an 8 hour work day, with unlimited pushing and pulling. (Tr. 244).

In his decision, the ALJ determined Claimant suffered from the

7

severe impairments of a back disorder and bipolar disorder. (Tr. 11). He found Claimant's impairments did not meet a listing. Specifically, Claimant's back symptoms did not meet Listing 1.04 because "[t]here is no evidence that the claimant had motor loss, or that the claimant had positive straight leg testing both sitting and supine." (Tr. 13).

Listing 1.04A requires certain factual findings be present, in stating:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . .
>
> 20 C.F.R. Pt. 404, Subpt. P, App. I § 1.04A.

The ALJ noted two deficiencies in finding Claimant failed to meet a listing – no motor loss and no positive straight leg testing both sitting and supine. With regard to the former, the medical record demonstrates Claimant suffered from atrophy in his left leg which necessarily entails a motor loss. Additionally, several positive straight leg raising tests were noted in the record. Whether both sitting and supine testing occurred is not expressly

8

stated in the record. The ALJ, however, apparently made no effort to clarify the testing with the treating physicians to determine whether it included both positions. On remand, the ALJ shall re-contact the appropriate physician to determine whether testing in both positions occurred and, therefore, whether Claimant meets Listing 1.04A. 20 C.F.R. § 416.912(e)(1).

### Treating Physician's Opinion

Claimant also contends the ALJ failed to properly consider Dr. Onaro's opinion. In his decision, the ALJ determined Dr. Onaro's assessment is "given only some weight" since the ALJ found Claimant "is slightly less limited than determined by Dr. Onaro." (Tr. 18). Dr. Onaro's limitations never appear in the ALJ's RFC evaluation in his decision. Consequently, despite finding Dr. Onaro's opinion only "slightly" overstated Claimant's limitations, the ALJ came nowhere near including Dr. Onaro's limitations.

The ALJ is required to give it controlling weight, unless circumstances justify giving it a lesser weight. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial

9

evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the

ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Essentially, the ALJ determined the medical opinion of Dr. Onaro was entitled to no weight by not including any of his limitations in his RFC assessment. On remand, the ALJ shall re-examine Dr. Onaro's opinion in light of the evidentiary record and discuss the appropriate weight it should be afforded under the prevailing standards. The ALJ shall also be specific as to the differences in the limitations found by Dr. Onaro and those found elsewhere in the evidentiary record.

### RFC Evaluation

Claimant also contends the ALJ made inappropriate findings as to his RFC. Since the ALJ must reconsider the opinions of Dr. Onaro on remand, he should also re-evaluate his RFC assessment.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service

of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 12th day of January, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE